# United States Court of Appeals

*for the*

# Federal Circuit

APPLE INC., a California corporation,

*Plaintiff-Cross-Appellant,*

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,
SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation,
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,
a Delaware limited liability company,

*Defendants-Appellants.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 5:12-CV-00630-LHK,
LUCY H. KOH, UNITED STATES DISTRICT JUDGE

## RESPONSE TO COMBINED PETITION FOR PANEL REHEARING AND REHEARING *EN BANC*

JOHN B. QUINN
SCOTT L. WATSON
MICHAEL T. ZELLER
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

KATHLEEN M. SULLIVAN
WILLIAM B. ADAMS
DAVID M. COOPER
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

BRIAN C. CANNON
KEVIN P.B. JOHNSON
VICTORIA F. MAROULIS
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
(650) 801-5000

*Attorneys for Defendants-Appellants*

April 14, 2016

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Defendants-Appellants certifies the following:

**1.    The full name of every party or amicus represented by me is:**

Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

Effective January 1, 2015, Samsung Telecommunications America, LLC ("STA") merged with and into Samsung Electronics America, Inc., and therefore STA no longer exists as a separate corporate entity.

**2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

N/A

**3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

Samsung Electronics America, Inc. ("SEA") is a wholly-owned subsidiary of Samsung Electronics Co., Ltd. ("SEC"), a publicly held corporation organized under the laws of the Republic of Korea.  SEC is not owned by any parent corporation and no other publicly held corporation owns 10% or more of its stock. No other publicly held corporation owns 10% or more of SEA's stock.

**4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this court are:**

Quinn Emanuel Urquhart & Sullivan, LLP: Deepa Acharya; William B. Adams; Anthony P. Alden; Carl G. Anderson; Alexander D. Baxter; Katherine B. Bearman; Robert J. Becher; Rebecca A. Bers; Kara M. Borden; Todd M. Briggs; Amy H. Candido; Brian C. Cannon; Kenneth R. Chiate; David M. Cooper; Lindsay Cooper; Clark Craddock; Patrick D. Curran; Jacob K. Danzinger; Edward J. DeFranco; Samuel M. Drezdzon; Marissa R. Ducca; David Elsberg; Eric J. Emanuel; Richard W. Erwine; Susan R. Estrich; Michael L. Fazio; Anastasia M. Fernands; Scott A. Florance; Ryan S. Goldstein; John S. Gordon; Ron Hagiz; Nathan A. Hamstra; Jordan R. Jaffe; Joshua P. Jaffe; Kevin P.B. Johnson; James D. Judah; Robert N. Kang; Rachel M. Kassabian; Scott B. Kidman; Peter A. Klivans; Valerie A. Lozano; Kristin J. Madigan; Victoria F. Maroulis; John T. McKee; Joseph Milowic; David A. Nelson; Jared W. Newton; Sean S. Pak; Daniel C. Posner; Christopher E. Price; Maxim Price; William C. Price; B. Dylan Proctor; John B. Quinn; Carlos A. Rodriguez; Shahin Rezvani; Patrick M. Shields; Elliot J. Siegel; Kevin A. Smith; Robert W. Stone; Kathleen M. Sullivan; Stephen A. Swedlow; Derek J. Tang; Amardeep L. Thakur; Bill Trac; Charles K. Verhoeven; Matthew S. Warren; Scott L. Watson; Cleland B. Welton II; Alan L. Whitehurst;

Lance L. Yang; Michael T. Zeller

<u>Crone Hawxhurst LLP:</u> Daryl M. Crone

<u>Sheppard Mullin Richter & Hampton LLP:</u>   Gary L. Halling; David R. Garcia;

Michael R. Heimbold; Mona Solouki

<u>Squire Patton Boggs (US) LLP:</u> Mark C. Dosker

<u>Steptoe & Johnson LLP:</u> John M. Caracappa; Michael R. Heimbold; Huan-Yi Lin;

Dylan Ruga

<u>Williams & Connolly, LLP:</u>   Stanley E. Fisher; Dov P. Grossman; David M.

Horniak; David M. Krinsky; Aaron P. Maurer


Dated:  April 14, 2016               Respectfully submitted,

                                     By: <u>/s/ Kathleen M. Sullivan</u>
                                     Kathleen M. Sullivan
                                     QUINN EMANUEL URQUHART
                                        & SULLIVAN, LLP
                                     51 Madison Avenue, 22nd Floor
                                     New York, NY 10010
                                     (212) 849-7000

                                     *Attorney for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND .......................................................................................................2

ARGUMENT ............................................................................................................6

I.    THE PANEL DECISION ON APPLE'S '647 PATENT DOES NOT
      MERIT REHEARING......................................................................................6

      A.    The Panel's Ruling That Apple Failed To Prove Infringement
            Was Based On The *Motorola* Claim Construction And The
            Record Evidence......................................................................................6

      B.    This Court Is Free To Consult And Cite Dictionaries and Other
            Documents of Public Record....................................................................7

II.   THE PANEL DECISION ON APPLE'S '721 AND '172 PATENTS
      DOES NOT MERIT REHEARING ...............................................................10

III.  THE PANEL DECISION ON SAMSUNG'S '449 PATENT DOES
      NOT MERIT REHEARING ..........................................................................13

CONCLUSION .......................................................................................................13

# TABLE OF AUTHORITIES

**Page**

## Cases

*Apple, Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) .................................................................passim

*Driessen v. Sony Music Entm't*,
2016 U.S. App. LEXIS 2254 (Fed. Cir. Feb. 10, 2016) ......................................8

*Gart v. Logitech, Inc.*,
254 F.3d 1334 (Fed. Cir. 2001) ...................................................8

*Hoganas AB v. Dresser Industries, Inc.*,
9 F.3d 948 (Fed. Cir. 1993) .................................................8

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007).................................................................4, 11, 12

*Linear Tech. Corp. v. Impala Linear Corp.*,
379 F.3d 1311 (Fed. Cir. 2004) ...................................................9

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ...................................................8

*Pyles v. Merit Sys. Protection Bd.*,
45 F.3d 411 (Fed. Cir. 1995) ...................................................9

*SightSound Techs., LLC v. Apple Inc.*,
809 F.3d 1307 (Fed. Cir. 2015) ...................................................5

*Southwall Techs., Inc. v. Cardinal IG Co.*,
54 F.3d 1570 (Fed. Cir. 1995) ...................................................6

*Turman-Kent v. MSPB*,
657 F.3d 1280 (Fed. Cir. 2011) ...................................................9

*Vitronics Corp v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ...................................................8

*Werk v. Parker*,
249 U.S. 130 (1919)...................................................8

## Statutes and Rules

35 U.S.C. § 103(a) ...................................................4

Fed. R. Evid. 201(c)(1) ...................................................9

Fed. R. Evid. 201(d)...................................................9

v

## **Other Authorities**

*Encyclopedia of Computer Science* (4th ed. 2000).....................................................10

*Dictionary of Computing* (4th ed. 1996).................................................................10

Stephen L. Montgomery, *Object-Oriented Information Engineering:*
  *Analysis, Design, and Implementation* (1994)....................................................10

## PRELIMINARY STATEMENT

The unanimous panel decision in this case (Dyk, J., joined by Prost, C.J. and Reyna, J.) does not merit rehearing. The decision applied well-established law, including this Court's own claim construction from a prior case, to properly determine that Samsung was entitled to judgment that it did not infringe Apple's '647 patent. The panel also correctly held that Apple's '721 and '172 patents are invalid as obvious and that the judgment that Apple infringed Samsung's '449 patent rested on sufficient evidence. Those rulings pose no conflict with this Court's precedent and accord with decisions of this Court and the United States Supreme Court. Apple's disagreement with the panel's application of settled law to the facts of this case does not warrant further review.

*First*, Apple offers no basis for rehearing the panel's holding that judgment of non-infringement should be entered on Apple's '647 patent. The '647 patent requires use of an "analyzer server," which this Court construed in *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1304 (Fed. Cir. 2014), as requiring "a server routine separate from a client." The panel properly applied that construction to the undisputed testimony at trial—including Apple's expert's own admissions—to hold that the evidence failed to show any server that ran separately from the applications on Samsung's accused devices. Thus, the panel's decision is correct and dictated by this Court's decision in *Motorola*. The panel's citation to

1

dictionaries, treatises and other patents in explaining that result was entirely proper, and Apple cites no case suggesting otherwise.

*Second*, Apple offers no basis for rehearing the panel's decision that Apple's '721 and '172 patents are invalid as obvious, which properly applied settled law to the record.  *Third*, Apple presents no plausible grounds for rehearing the panel's affirmance of the judgment that Apple infringed  Samsung's '449 patent.

## BACKGROUND

***Apple's '647 Patent***: Apple asserted that certain Samsung devices infringed claim 9 of the '647 patent.  As described in the panel opinion, the '647 patent "discloses a system for recognizing certain structures (such as a telephone number) on a touchscreen and linking certain actions (such as calling the telephone number) to the structure."  Op. 6.  Claim 9 requires an "analyzer server" that detects the structures and performs the linking between the structure and the program that executes the selected action.

This Court construed the term "analyzer server" in the '647 patent in *Motorola*, 757 F.3d at 1304, holding that "analyzer server" means "a server routine separate from a client that receives data having structures from the client."  Op. 8. *Motorola* describes in detail how the plain meaning of "server" entails a relationship between a client and server that are separate.  757 F.3d at 1304-05. Apple, however, tried its case below based on the claim construction it presented

2

and lost in *Motorola*—namely that "analyzer server" need *not* be separate from the client application.  Op. 9.

The panel undertook a straightforward application of the *Motorola* construction to the trial record.  The panel began by reiterating that:

> Our previous construction required more than just showing that accused software was stored in a different part of the memory and was developed separately.  We found that the "analyzer server" limitation is a separate structural limitation and must be a "server routine" consistent with the "plain meaning of 'server.'"  *Motorola*, 757 F.3d at 1304.  That is, it must run separately from the program it serves.

Op. 10.  As the panel noted, Apple failed to show infringement under that construction.  Apple's expert testified at trial that a server could be any piece of software and did not have to be separate.  *Id.*  When the *Motorola* construction issued near the end of the trial below, rejecting that approach, Apple's expert tried to revamp his testimony, asserting that the "shared library" software in Samsung's accused devices "goes to the code where it is and uses it there, and it does that each time it accesses the code."  Op. 9-10 (citing J.A. 13037:1-10).  As the panel concluded, "this testimony is not sufficient evidence to allow a jury to conclude that the Samsung software met the 'analyzer server' limitation" by running separately from the applications.  Op. 10.  And Apple's counsel could not point to any other testimony that the accused shared library software ran separately from the client applications.  Op. 11.  As the panel further noted, one of the '647 inventors confirmed that the accused shared library "was a 'different kind of

3

implementation' than a client-server implementation."  Op. n.6 (citing ECF No. 1928 (Trial Tr. of April 28, 2014) at 3045-46; ECF No. 1624 (Trial Tr. of April 7, 2014) at 897-99).

In addition to comparing the record evidence to the *Motorola* construction of "analyzer server," the panel cited a few external references that further illuminated that construction.  For instance, the panel cited definitions of a "program library" after discussing the shared library software accused by Apple.  Op. 8-9.  Contrary to Apple's argument (Pet. 8), the panel did not rely on these definitions to determine how Samsung's devices work; the panel simply cited these definitions as background concerning a "shared library."  And the panel, after explaining the "client server relationship" required by the *Motorola* decision, provided additional descriptions of servers set forth in a variety of references, from an encyclopedia to a United States Patent to a court decision.  Op. 10 n.5.  All of those references support the same plain meaning explained by *Motorola*:  "the 'analyzer server' had to involve a 'client server relationship.'"  *Id.* (quoting *Motorola*, 757 F.3d at 1304).

***Apple's '721 Patent***:  The panel found that Samsung was entitled to judgment that Apple's '721 "slide to unlock" patent is invalid as obvious under 35 U.S.C. § 103(a); *see KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).  Op. 15-16.  As the panel determined, two prior art references, Neonode and Plaisant, show a phone with a touchscreen being unlocked by a virtual sliding mechanism and the

4

Neonode reference includes the text "Right sweep to unlock." Op. 16-18. The panel concluded that the references included all the limitations of the claim, and that it would have been obvious to combine them. Op. 18-19. The panel further rejected Apple's argument that the Plaisant reference "taught away" from Apple's patent because "[o]ur cases have recognized that the 'mere disclosure of more than one alternative' does not amount to teaching away from one of the alternatives where the reference does not 'criticize, discredit, or otherwise discourage the' solution presented by the disclosure." Op. 19 (quoting *SightSound Techs., LLC v. Apple Inc*., 809 F.3d 1307, 1320 (Fed. Cir. 2015)). After careful analysis, the panel rejected Apple's attempt to rely on secondary considerations to overcome Samsung's "strong" prima facie case of obviousness. Op. 24-28.

*Apple's '172 Patent*: The panel likewise found that Samsung was entitled to judgment that Apple's '172 patent, directed to "autocorrect," is invalid as obvious. Op. 28-35. One piece of prior art, Robinson, "discloses every aspect of the invention except displaying and replacing an incorrectly typed word in a first area (in context)." Op. 32. Another reference, Xrgomics, discloses this element. *Id.* There would have been a motivation to combine the prior art, given that Xrgomics addresses text completion, a "closely related problem[] in the 'same field of endeavor'" as text correction. Op. 33. The strong prima facie case of obviousness was not outweighed by "very weak" secondary considerations. Op. 34-35.

*Samsung's '449 Patent*:   The jury found that Apple infringed Samsung's '449 patent, directed to camera systems on mobile devices for compressing and storing photos.   Op. 43.   The panel pointed out the substantial evidence that supported the verdict, affirming the district court's denial of JMOL.   Op. 44-45.

## ARGUMENT

## I.   THE PANEL DECISION ON APPLE'S '647 PATENT DOES NOT MERIT REHEARING

### A.   The Panel's Ruling That Apple Failed To Prove Infringement Was Based On The *Motorola* Claim Construction And The Record Evidence

The panel properly applied the *Motorola* claim construction to the record evidence to conclude that no reasonable jury could have found infringement of the '647 patent.   Op. 11-13.   It is settled law that Apple had the burden to prove infringement of each and every limitation of the claim, *Southwall Techs., Inc. v. Cardinal IG Co*., 54 F.3d 1570, 1575 (Fed. Cir. 1995), including the existence of an "analyzer server."   Under the *Motorola* claim construction, Apple failed to do so, for it failed to show an "analyzer server" that ran "separately from the program it serves."  Op. 10.

Samsung's witnesses testified that the accused shared library software does not run separately as required by this Court's construction.   Op. 11.   And "Apple could point to no testimony where its expert stated that the library programs run separately."  *Id.*   As the panel explained, the only testimony Apple pointed to—

"the Samsung software 'has access to the code and it goes to the code where it is and *uses* it there,'" J.A. 13037:1-10 (emphasis added)—actually disproved its argument. Op. 11. Because the client application "*uses* the library program," that belies any inference that "the library program code runs separately." *Id.* Apple's expert admitted that "the Samsung programs were not 'standalone program[s].'" *Id.* (quoting J.A. 13054). Thus, Apple failed to provide *any* evidence to prove infringement under the *Motorola* construction of "analyzer server."

Apple's argument (Pet. 2) that the panel engaged in "appellate fact finding" is completely at odds with the analysis set forth in the opinion. The facts are what the trial record showed them to be: "Apple provided no evidence that the accused software library programs in the Samsung phones run separately from the Browser and Messenger applications." Op. 13. As is clear from the record, Apple tried its case hoping the *Motorola* decision would come out in its favor. It did not. And once it issued, Apple failed to provide evidence to meet the *Motorola* construction.

Apple thus provides no rationale for panel or *en banc* rehearing of the fact-specific decision that there was no evidence of a separate server, as required by *Motorola*. The panel engaged in a detailed review of the facts of record, and Apple's disagreement with the panel's conclusion does not warrant rehearing.

### B.    This Court Is Free To Consult And Cite Dictionaries and Other Documents of Public Record

Contrary to Apple's suggestion (Pet. 5-11), the panel's use of dictionaries

and other sources to illuminate the "analyzer server" construction is fully consistent with this Court's precedent. In *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), this Court addressed the use of dictionaries in the context of claim construction and confirmed that "judges are free to consult dictionaries and technical treatises 'at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.'" *Id*. at 1322-23 (quoting *Vitronics Corp v. Conceptronic, Inc*., 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996)). Indeed, there is long established precedent for citations to dictionaries and other references. *Werk v. Parker*, 249 U.S. 130, 132-33 (1919) (holding that it was "clear, beyond question" that the court of appeals "was justified in taking judicial notice of facts that appeared so abundantly from standard works accessible in every considerable library," including "the British Encyclopedia . . . [and] the Standard Dictionary of 1894"); *see also Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (taking judicial notice of a patent).

This Court has often cited dictionary definitions on appeal for the first time, including definitions of claim terms. *See, e.g.*, *Driessen v. Sony Music Entm't*, 2016 U.S. App. LEXIS 2254 at *5-6 (Fed. Cir. Feb. 10, 2016) (citing a dictionary definition in affirming the district court's claim construction); *Gart v. Logitech,*

8

*Inc.*, 254 F.3d 1334, 1343 (Fed. Cir. 2001) (adopting a dictionary definition for a claim construction); *Linear Tech. Corp. v. Impala Linear Corp.,* 379 F.3d 1311, 1320 (Fed. Cir. 2004) (citing Dictionary of Computing for a claim construction).

Apple cites no case from any court ever questioning a court's ability to cite dictionaries, articles, and other references in its opinions. Such a rule would restrict courts in an unacceptable and pointless manner. The cases cited by Apple (Pet. 7-8) in discussing the substantial evidence standard refer to reviewing the "record" on appeal, but none suggests that dictionaries and other reference materials cannot be used to understand the meaning of the language in the record.[1]

The panel's use of dictionaries and other references here was particularly appropriate because the explanation of the technical terms here in those references was uniform and consistent.[2] The panel did not just cite dictionaries, but provided

---

[1] Apple complains (Pet. 11 n.6) that formal judicial notice was not sought in this case but cites no requirement for such a process. This Court regularly takes judicial notice of treatises and dictionaries, and may do so without a request from either of the parties. *See, e.g.*, *Pyles v. Merit Sys. Protection Bd.*, 45 F.3d 411, 415 (Fed. Cir. 1995) (judicial notice of dictionaries); *Turman-Kent v. MSPB*, 657 F.3d 1280, 1285 (Fed. Cir. 2011) (Reyna, J., dissenting) (judicial notice of medical dictionaries); *see also* Fed. R. Evid. 201(c)(1); Fed. R. Evid. 201(d). And in many cases, this Court cites treatises and dictionaries without expressly mentioning judicial notice at all. *See, e.g.*, *Linear Tech. Corp.*, 379 F.3d at 1320.

[2] Apple also points (Pet. 9-10) to uncited portions of three of the references, claiming that they support Apple's positions. Apple is incorrect. For instance, Apple argues that the *Montgomery* textbook and '583 patent include language purportedly supporting the idea that a "shared library" can be a server ("A server

a variety of sources such as the *Encyclopedia of Computer Science* (4th ed. 2000); United States Patent No. 5,546,583 ("Client/server interaction provides a clean separation of functions between processes"); *Dictionary of Computing* (4th ed. 1996); and Stephen L. Montgomery, *Object-Oriented Information Engineering: Analysis, Design, and Implementation* (1994) ("A client/server relationship assumes a 'clean separation of functions'—both the client and the server are independently operating programs, each performing separate functions."). These varied sources confirmed the *Motorola* construction. It would be contrary to the public notice function that written opinions serve for a court of appeals to be precluded from citing references that help the reader better understand the analysis, especially one that further explains a claim construction established in a prior decision not challenged here. Similarly, there is no Seventh Amendment issue implicated by the panel's non-controversial citation of publicly available material.

## II. THE PANEL DECISION ON APPLE'S '721 AND '172 PATENTS DOES NOT MERIT REHEARING

*Apple's '721 Patent*: Contrary to Apple's argument (Pet. 11-15), the panel applied the correct law to the undisputed facts in holding that claim 8 of the '721

---

can service many clients at the same time and regulate access to shared resources."). This language, however, does not support the notion that a "server" can be a "shared library." Rather, the references merely state that a "server" can regulate a client application's access to shared resources such as a shared library (ECF 92-3, 92-4), which makes sense only if the shared resources are not a part of the server. The references are fully consistent with the *Motorola* construction.

patent was invalid as obvious. The "slide to unlock" feature was present in the prior art; Apple ignores the reasoning of the panel in arguing (Pet. 14) that the opinion conflicts with *KSR*. According to Apple, the panel found a strong case for obviousness solely because the elements of the claim were in the prior art, but in fact the panel held both that the prior art disclosed all elements *and* that there was a motivation to combine the prior art. Op. 19-23.

Apple argues (Pet. 14) that the panel wrongly placed the burden on Apple to disprove a motivation to combine the elements of the prior art. But the panel never remotely suggested—let alone stated—that Apple had any such burden. The only statements Apple cites are simply descriptions of Apple's argument. Op. 19 ("Apple argues that the jury could have reasonably found that . . . a skilled artisan would not have had the motivation to combine Neonode and Plaisant . . . .").

Moreover, the panel makes clear precisely why there was a motivation to combine. Apple argued that there was no motivation to combine the prior art because Plaisant concerned a wall-mounted touchscreen, but the panel held that "no reasonable jury" could agree because "Samsung presented expert testimony that a person of skill in the art 'would be highly interested' in both Neonode and Plaisant when faced with the inadvertent activation problem"; "Apple did not offer any expert testimony that Plaisant was not relevant to the subject matter of the '721 patent"; in the information disclosure statement to the PTO, "the patentee included

as potentially relevant many prior art references relating generally to human-interface design, including the Plaisant reference"; and "[b]oth the '721 patent and the Plaisant reference also disclose essentially the same structure." Op. 21-23.

With respect to secondary considerations, the panel found evidence of Samsung's supposed copying unhelpful because "[w]hat was copied was not the iPhone unlock mechanism in its entirety, but only using a fixed starting and ending point for the slide, a feature shown in the Plaisant prior art." Op. 27. Apple provides no reason why supposed copying belies obviousness when the only thing copied was a specific feature in the prior art. There is accordingly no conflict with *KSR* or any decision of this Court.

***Apple's '172 Patent***:   Contrary to Apple's argument (Pet. 13-15), the entirety of the claim directed to autocorrect was present in the prior art, and the panel was correct in applying *KSR*. Apple argued that there was no motivation to combine the prior art because Xrgomics deals with text completion rather than text correction, but the panel held that "no reasonable jury" could agree because the specification states that "the disclosed invention 'relate[s] generally to text input on portable electronic devices'"; "[b]oth the '172 patent and Xrgomics disclose text input systems on a mobile device, and do so with remarkably similar structures"; and "text correction and text completion are closely related problems in the 'same field of endeavor.'" Op. 33. Apple ignores all of this reasoning in its petition.

Nor does Apple explain why this case-specific judgment warrants *en banc* review.

Finally, Apple errs in arguing (Pet. 14-15) that the panel's evaluation of secondary considerations was too "rigid." The panel's analysis was based not on any rule—rigid or otherwise—but rather on the fact that the evidence did not support the existence of secondary considerations of non-obviousness. Op. 33-35. Apple suggests (Pet. 15) that the panel discounted evidence of long-felt need because it came from one expert, but the panel in fact found that "[n]o reasonable jury could find testimony by a single expert about his *personal experience with one device* as evidence of an industry-wide long-felt need." Op. 25-26 (emphasis added). Neither of the obviousness holdings warrants rehearing.

## III.  THE PANEL DECISION ON SAMSUNG'S '449 PATENT DOES NOT MERIT REHEARING

The holding that sufficient evidence supported the jury's finding that Apple infringed Samsung's '449 patent does not conflict with any Supreme Court decisions or precedents of this Court. Indeed, in its petition, Apple does not cite a single case that the panel decision allegedly contravenes. Pet. 15. As the panel pointed out, there is ample evidence in the record to support the jury verdict. Op. 43-45.

## <u>CONCLUSION</u>

The petition should be denied.

Dated:  April 14, 2016

Respectfully submitted,

By: /s/ Kathleen M. Sullivan

Kevin P.B. Johnson
Victoria F. Maroulis
Brian C. Cannon
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile:  (650) 801-5100

   Kathleen M. Sullivan
   William B. Adams
   David M. Cooper
   QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
   51 Madison Avenue, 22nd Floor
   New York, NY 10010
   Telephone: (212) 849-7000
   Facsimile: (212) 849-7100
   kathleensullivan@quinnemanuel.com

   John B. Quinn
   Michael T. Zeller
   Scott L. Watson
   QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
   865 S. Figueroa St., 10th Floor
   Los Angeles, CA 90017
   Telephone:  (213) 443-3000
   Facsimile:  (213) 443-3100

*Attorneys for Defendants-Appellants*

14

## <u>PROOF OF SERVICE</u>

The undersigned hereby certifies that on April 14, 2016, I electronically filed the foregoing RESPONSE TO COMBINED PETITION FOR PANEL REHEARING AND REHEARING *EN BANC* with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Kathleen M. Sullivan</u>
Kathleen M. Sullivan